UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN A. MENZ and JENIFER MENZ, ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> NEW HOLLAND NORTH AMERICA, INC., ) <br> FORD MOTOR COMPANY, BANGERT ) <br> TRACTOR SALES, INC., and ) <br> WESTENDORF MANUFACTURING CO., ) <br> INC., ) <br> ) <br> Defendant(s). ) | Case No. 4:03CV1762 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Westendorf Manufacturing Company, Inc.'s ("Westendorf") Motion for Summary Judgment, filed August 29, 2006. (Doc. No. 94). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs filed their First Amended Complaint in this matter on April 21, 2004. (Doc. No. 20). In the First Amended Complaint, Plaintiff Steven A. Menz ("Menz") alleges the following causes of action: Count I--Strict Liability against New Holland North America and Ford Motor Company (collectively "Defendants") (Defective Condition/Unreasonably Dangerous); Count II--Strict Liability against Defendants (Failure to Warn); Count III--Negligence against Defendants; Count IV--Negligence against Bangert Tractor Sales, Inc. ("Bangert")[1]; Count V--Negligence against Westendorf; and Count VI--Strict Liability against Westendorf (Defective Condition/Unreasonably

---

[1] In an Order entered May 2, 2006, the Court dismissed Plaintiffs' claims against Bangert with prejudice. (Doc. No. 86).

Dangerous and Failure to Warn). (First Amended Complaint, ¶¶ 11-41). In Count VII, Plaintiff Jenifer Menz alleges Loss of Consortium against all Defendants. (Id., ¶¶ 42-45).

Plaintiffs' claims stem from an incident on October 3, 2002, in which the 1976 Ford 6600 Model tractor Menz was operating tipped over into a "washout", pinning Menz beneath the tractor for twelve hours, and severing his left arm at the shoulder. (First Amended Complaint, ¶ 10; Westendorf's Statement of Uncontroverted Material Facts ("Westendorf's Facts"), ¶¶ 14, 15, 19, citing Menz Dep., PP. 172, 185-187, 247). At the time of the accident, Menz's tractor was equipped with a Westendorf TA-26 Model front end loader he had acquired in 1994 or 1996. (First Amended Compl., ¶ 7; Westendorf's Facts, ¶ 7).[2]

After the accident, Menz had the accident scene re-graded, filling in the washout where the tractor landed. (See Menz Dep., P. 62). Menz further sold the front end loader he had been using, and made substantial repairs to the tractor, including rebuilding the top hood assembly, and replacing both back fenders, the steering wheel, the muffler, and the seat. (See Menz Dep., PP. 48, 198).

According to Plaintiffs, the Westendorf loader Menz was using at the time of the accident was unreasonably dangerous when put to a reasonably anticipated use, in that it: 1) caused tractors upon which it was placed to be unstable under normal use conditions; 2) caused tractors upon which it was placed to be susceptible to tipping over on slightly uneven terrain; 3) caused tractors upon which it was placed to be susceptible to tipping over while a loaded bucket was being used; 4) was not sold or equipped with stabilizers or adequate devices to prevent tipover while loaded buckets were in use; 5) was sold in such a way that it was capable of installation on tractors too small for the loader; and 6) was sold with inadequate warnings, labels and instructions. (First Amended Compl., ¶ 38). On

---

[2] On the day of the incident, Menz was moving dirt around a farm pond by carrying the dirt in the loader bucket. (Westendorf's Facts, ¶ 12, citing Menz Answers to Westendorf's Interrogatories, ¶¶ 18, 19).

the basis of these allegations, Menz seeks to hold Westendorf liable on theories of negligence[3], strict liability--defective condition unreasonably dangerous, and strict liability--failure to warn. (Id., ¶¶ 34-41). Plaintiff Jenifer Menz seeks to hold Defendants liable for loss of consortium. (Id., ¶¶ 42-45).

In its Motion for Summary Judgment, Westendorf maintains there exist no genuine issues of material fact, and thus Westendorf is entitled to judgment as a matter of law on Counts V, VI and VII of Plaintiffs' First Amended Complaint. (Doc. No. 94).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

---

[3] Menz further seeks to hold Westendorf liable in negligence, for selling the loader without a roll over protection system ("ROPS"), to aid in the event of a tipover. (See First Amended Compl., ¶ 35(e)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Strict Liability (Defective Condition/Unreasonably Dangerous)

As stated above, in Count VI of his First Amended Complaint, Menz alleges Westendorf is strictly liable for his injury, as it was caused by an allegedly defective product designed and manufactured by Westendorf. Specifically, Menz maintains the loader was unreasonably dangerous when put to a reasonably anticipated use, for two reasons: first, because it caused tractors upon which it was placed to be unstable and/or susceptible to tipping over under normal use conditions, including during use on slightly uneven terrain; and second, because it was sold in such a way that it was capable of installation on tractors too small for the loader. (First Amended Compl., ¶ 38).

#### A. Was The Loader Unreasonably Dangerous When Put To Its Anticipated Use As A Result Of Its Propensity To Cause Tractors Upon Which It Was Placed To Become Unstable?

As stated above, Menz first asserts the loader at issue was unreasonably dangerous when put to its anticipated use, because it caused tractors upon which it was placed to be unstable and/or susceptible to tipping over under normal use conditions, including during use on slightly uneven

terrain.[4] (First Amended Compl., ¶ 38).[5] Under Missouri law[6], in order to prevail in a products liability action under a theory of defective design, Menz must establish that, "1) defendant sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was injured as a direct result of such defective condition as existed when the product was sold." Stanger v. Smith & Nephew, Inc., 401 F.Supp.2d 974, 978 (E.D. Mo. 2005) (internal quotations and citations omitted).

Upon consideration, the Court finds Menz is unable to establish the fourth element of his products liability case, i.e., that he was injured as a direct result of the allegedly defective condition that existed when the product was sold. Specifically, the Court notes Plaintiffs' expert acknowledged that he was unable to verify the following critical components of the accident: the height of the loader at the time of the accident; the weight of the dirt in the loader at the time of the accident; the speed at which the tractor was traveling at the time of the accident; the angle of the turn; the slope of the ground; the depth of the ditch[7]; the soil conditions at the accident scene; whether the wheels

---

[4] The Court notes that Menz's subsequent re-grading of the accident scene prior to examination by Westendorf and its expert renders his claim of "slightly uneven terrain" insusceptible of proof.

[5] Menz's expert concedes the risk of tractor rollover cannot be designed away entirely. (See Westendorf's Forensic Liability Issue Opinions, ¶ 6, citing Ryan Dep., Vol. II, P. 292; see also Ryan Dep., Vol. I, P. 59; Vol. III, P. 566; Vol. IV, PP. 178-179).

[6] This is a diversity case, where the law of Missouri governs the rights of the parties. See Stanger, 401 F.Supp.2d at 978.

[7] Plaintiffs' expert, L.D. Ryan, testified that, even if the depth of the ditch and slope of the terrain in the occurrence area were known, he could not compute whether the tractor would have overturned if it had not been equipped with the loader. (Westendorf's Forensic Liability Issue Opinions, ¶ 9, citing Ryan Dep., Vol. II, P. 262-263).

contained ballast[8]; the angle of the bucket at the time of the accident; whether there was a hydraulic leak which caused the loader to fall; the nature of the terrain; whether Menz was using wheel brakes; the steering radius; and whether Menz hit the brakes. (See Ryan Dep., Vol. II, PP. 263-264, 266-272, 273-274, 278; Vol. III, PP. 459-460, 483, 487, 559; Vol. IV, PP. 66-67). In light of these gaps, the Court finds any conclusion the accident was caused by the defective nature of the loader, rather than the circumstances of the accident and the scene itself, would be based on inadmissible speculation. See J.B. Hunt Transport, Inc. v. General Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001). Westendorf's Motion for Summary Judgment on this point must therefore be granted.

> **B. Was The Loader Unreasonably Dangerous When Put To Its Anticipated Use Because It Was Capable Of Installation On Tractors Too Small For The Loader?**

In its Motion for Summary Judgment, Westendorf next asserts Menz offers no evidence, forensic or lay, to support his allegation that the occurrence loader was too large for the occurrence tractor. (Westendorf's Memoradum of Law in Support of Motion for Summary Judgment, P. 11). In support of this assertion, Westendorf offers the testimony of Menz's neighbors, Larry Borgfield, Don Borgfield, Victor Burns, and Frank Burns, to the effect that the Westendorf Model TA-26 loader is not too big for the Ford 6600 tractor. (Westendorf's Lay Witness Liability Facts/Opinions, ¶¶ 1-3, citing Larry Borgfield Dep., PP. 6, 22, 34, 35; Victor Burns Dep., P. 56; Frank Burns Dep., P. 57; Don Borgfield Dep., P. 21). Plaintiffs do not dispute Westendorf's assertion in their response, and so the Court will grant this portion of Westendorf's Motion for Summary Judgment.

---

[8] This is important because Defendants New Holland North America and Ford Motor Company contend the tractor's rear tires contained unequal ballast at the time of the accident, a condition that would significantly impact the stability of the tractor. (See Defendants' Memorandum in Support of their Motion for Summary Judgment, PP. 12-14, citing Abramczyk Report, P. 1; Abramczyk Dep., PP. 17-18; Ryan Dep. Vol. I, PP. 121, 193, 195-198; Vol. II, PP. 278-280; Vol. IV, PP. 124-125, 136-137; Menz Dep., PP. 49, 109; Operator's Manual, PP. 35-38; Hill Dep., PP. 102-104, 152-153).

## II. Strict Liability (Failure To Warn)

As stated above, in Count VI of his First Amended Complaint, Menz alleges Westendorf is strictly liable for his injury, as the loader designed and manufactured by Westendorf was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics. (First Amended Compl., ¶ 38). Specifically, Menz maintains Westendorf failed to give adequate warning regarding the following: 1) proper use; 2) tractor instability; 3) tractor instability while loader was being used; 4) use of front end loader without proper stabilization devices; 5) warning about susceptibility to tipping over on slightly uneven terrain while buckets were in use; and 6) installation on proper sized tractors. (First Amended Compl., ¶ 38(f)).

Under Missouri law, "[t]he elements of a cause of action for strict liability-failure to warn are as follows: (1) defendant sold the product in question in the course of his business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning." Cole v. Goodyear Tire & Rubber Co., 967 S.W.2d 176, 183 (Mo. App. 1998) (citation omitted). Further, "[t]here are two separate requirements of causation in a failure to warn case: (1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered his behavior." Id. at 184, citing Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. banc 1992). Summary judgment properly is entered if either causation element is lacking. Mothershead v. Greenbriar Country Club, Inc., 994 S.W.2d 80, 89 (Mo. App. 1999) (citation omitted). Finally, in cases such as this, involving technical and complex machinery whose properties are outside the common knowledge or experience of a jury, "[a] failure to warn claim requires admissible expert

testimony that additional or other warnings might have altered the behavior of the plaintiff." Davidson v. Besser Co., 70 F.Supp.2d 1020, 1023 (E.D. Mo. 1999) (citation omitted). See also Bryant v. Laiko Intern. Co., Inc., 2006 WL 2788520 at *10 (E.D. Mo. Sept. 26, 2006).

Upon consideration, the Court finds Westendorf is entitled to summary judgment on Menz's failure to warn claim. Specifically, it is undisputed that Menz's sole warnings expert, L.D. Ryan, testified there were no warnings which Westendorf could have given Plaintiff that would have altered his conduct at the time of the accident:

> Q: Is there information that you believe Steve Menz lacked that would have changed the outcome of this accident?
> A: No....
> Q: So there isn't any information that you think he needed to be warned about–
> A: No.
> Q: --that would have changed the outcome.
> A: No. Because if that's true, then I could put on your dashboard, "Be careful; don't drive too fast; stay within the speed limit; make sure you got two or three car spaces ahead of you so if somebody's coming in your rearview mirror, you can get around them." You can't do safety with warnings. It's Number 3 or Number 4, depending on the standard. So forget warnings. Fix it....

(Ryan Dep., Vol. I, P. 182).[9] Thus, in the absence of expert testimony, the Court finds Menz fails to make a submissible case with respect to the causation element of his failure to warn claim.[10]

---

[9] Menz's attempt to counter this sworn testimony with his own affidavit is unavailing. See Klugesherz v. American Honda Motor Co., Inc., 929 S.W.2d 811, 813-14 (Mo. App. 1996).

[10] Menz attempts to overcome Westendorf's Motion for Summary Judgment by pointing out Missouri allows a presumption a plaintiff would have heeded an absent warning. See Cole, 967 S.W.2d at 184. The presumption is only implicated, however, "when there is sufficient evidence from which a jury could find plaintiff did not already know of the danger." Id. (citation omitted). That is not the case here, as Menz conceded that prior to the accident (1) he was aware he could rollover his tractor if he drove on a steep enough incline, (2) he had been warned by Dewayne Birk, a farmer and excavation contractor hired by Menz before the occurrence, to keep his loader bucket low to the ground when hauling dirt to avoid getting into trouble, and (3) he knew of both the existence and purpose of ROPS systems. (Westendorf's Facts, ¶ 10; Westendorf's Forensic Liability Issue Opinions, ¶¶ 4, 5; Westendorf's Lay Witness Liability Facts/Opinions, ¶ 4). These admissions illustrate Menz had knowledge of the specific risk of injury encountered here. See Cole, 967 S.W.2d

### III. **Negligence**

As stated above, in Count V of his First Amended Complaint, Menz claims his injuries were a direct and proximate result of Westendorf's negligence, as Westendorf knew or should have known the loader: 1) caused tractors upon which it was placed to be unstable under normal use conditions; 2) caused tractors upon which it was placed to be susceptible to tipping over on slightly uneven terrain; 3) caused tractors upon which it was placed to be susceptible to tipping over while a loaded bucket was being used; 4) was not sold or equipped with stabilizers or adequate devices to prevent tipover while loaded buckets were in use; 5) was not sold with a ROPS system to prevent injury while using a tractor equipped with the loader; 6) was sold with inadequate warnings, labels and instructions; and 7) was sold in such a way that it was capable of installation on tractors too small for the loader. (First Amended Compl., ¶ 35).

Under Missouri law, "'[i]n an action for negligence, generally, a plaintiff must allege ultimate facts which if proven, show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.'" Pro Service Automotive, L.L.C. v. Lenan Corp, 2005 WL 3371054 at *13 (W.D. Mo. Dec. 12, 2005), citing Scheibel v. Hillis, 531 S.W.2d 285, 288 (Mo. 1976) (en banc). Thus, "[t]o recover on their claim for negligent manufacture, design or failure to warn, the Plaintiffs must establish that the Defendant failed to use ordinary care to either manufacture and/or design the [Westendorf TA-26 Model front end loader] to be reasonably safe or to adequately warn of the risk of harm from [the alleged defect in the Westendorf TA-26 Model front end loader]." Id. (internal quotations and citation omitted).

A Court in this district previously has held that, "[n]egligence claims have a higher threshold

---

at 185.

of proof than strict liability claims." Jaurequi v. John Deere Co., 971 F.Supp. 416, 431 (E.D. Mo. 1997), citing Peitzmeier v. Hennessy Indus., Ind., 97 F.3d 293, 296 n. 2 (8th Cir. 1996). Thus, with respect to all claims other than the failure to provide a ROPS system, this Court's conclusion that Menz fails to present triable strict liability claims for defective design or failure to warn necessitates the granting of summary judgment on Menz's negligence claims as well. Id. at 431-32 (citation omitted).

As noted above, in his negligence count Menz includes a claim that Westendorf was negligent for failing to provide a roll over protection system to aid in the event of a tipover. (First Amended Compl., ¶ 35(e)). In Morrison v. Kubota Tractor Corporation, however, the Missouri Court of Appeals held as follows:

> If the absence of a ROPS is to be regarded as a design defect, it is a defect that is patent beyond doubt. Such an open and obvious lack of this safety feature on the tractor purchased and operated by Morrison at the time of his death is not actionable under the negligence law of Missouri as declared by our Supreme Court.

Morrison, 891 S.W.2d 422, 427-428 (Mo. App. 1994). Westendorf thus is entitled to summary judgment on this portion of Menz's negligence claim as well.[11]

## IV.  **Loss of Consortium**

In the final Count of the First Amended Complaint, Plaintiff Jenifer Menz alleges loss of consortium. (First Amended Compl., ¶¶ 42-45). In their response to Westendorf's Motion for

---

[11] The Court notes Westendorf would have been entitled to summary judgment on a strict liability claim with respect to the absence of a ROPS as well, because Menz is unable to establish the requisite element of causation. Specifically, the Court notes Menz offers absolutely no evidence regarding either the amount of force any alleged ROPS would or could have withstood, or how the tractor, the loader, and/or Menz would have landed had the loader been equipped with a ROPS. In light of these deficiencies, the Court finds any conclusion that Menz would not have suffered serious injury had the loader been equipped with a ROPS would necessarily depend on speculation and conjecture. See Chaney v. Smithkline Beckman Corp., 764 F.2d 527, 529 (8th Cir. 1985) ("The jury, however, is not permitted to speculate about the substantive elements of a case.").

- 10 -

Summary Judgment, Plaintiffs concede that a loss of consortium claim is wholly derivative, and thus rises or falls with the success of the underlying claims of the injured spouse. (Plaintiffs' Response to Defendant Westendorf's Motion for Summary Judgment, P. 10). See Wright v. Barr, 62 S.W.3d 509, 537 (Mo. App. 2001). Given the Court's finding of a failure of proof on Menz's claims, his wife's derivative claim fails as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Westendorf's Motion for Summary Judgment (Doc. No. 94) is **GRANTED**, and Plaintiffs' claims against Defendant Westendorf Manufacturing Company, Inc., are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the outstanding motions in this matter (Doc. Nos. 98, 100, 115) are **DENIED** as moot.

Dated this 9th day of November, 2006.

/s/ Jean C. Hamiton
UNITED STATES DISTRICT JUDGE