UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN A. MENZ and JENIFER MENZ, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:03CV1762 JCH |
| | ) |
| NEW HOLLAND NORTH AMERICA, INC., | ) |
| FORD MOTOR COMPANY, BANGERT | ) |
| TRACTOR SALES, INC., and | ) |
| WESTENDORF MANUFACTURING CO., | ) |
| INC., | ) |
| | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants New Holland North America, Inc. and Ford Motor Company's Motion for Summary Judgment, and Motion to Exclude the Testimony of Plaintiff's Expert L.D. Ryan ("Motion to Exclude"), both filed August 28, 2006. (Doc. Nos. 88, 91). The motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs filed their First Amended Complaint in this matter on April 21, 2004. (Doc. No. 20). In the First Amended Complaint, Plaintiff Steven A. Menz ("Menz") alleges the following causes of action: Count I--Strict Liability against New Holland North America and Ford Motor Company (collectively "Defendants") (Defective Condition/Unreasonably Dangerous); Count II--Strict Liability against Defendants (Failure to Warn); Count III--Negligence against Defendants; Count IV--Negligence against Bangert Tractor Sales, Inc. ("Bangert")[1]; Count V--Negligence against

---

[1] In an Order entered May 2, 2006, the Court dismissed Plaintiffs' claims against Bangert with prejudice. (Doc. No. 86).

Westendorf Manufacturing Company, Inc. ("Westendorf"); and Count VI--Strict Liability against Westendorf (Defective Condition/Unreasonably Dangerous and Failure to Warn). (First Amended Complaint, ¶¶ 11-41). In Count VII, Plaintiff Jenifer Menz alleges Loss of Consortium against all Defendants. (Id., ¶¶ 42-45).

Plaintiffs' claims stem from an incident on October 3, 2002, in which the 1976 Ford 6600 Model tractor Menz was operating tipped over into a "washout", pinning Menz beneath the tractor for twelve hours, and severing his left arm at the shoulder. (First Amended Complaint, ¶ 10; Defendants' Memorandum in Support of their Motion to Exclude the Testimony of Plaintiffs' Expert L.D. Ryan ("Defendants' Daubert Memo in Support"), P. 4). The tractor at issue was designed and manufactured by Defendant Ford Motor Company[2], and was approximately twenty-six years old at the time of the accident. (Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 1; Defendants' Memorandum in Support of their Motion for Summary Judgment ("Defendants' Summary Judgment Memo in Support"), P. 1).[3] At the time of the accident Menz's tractor was equipped with a Westendorf TA-26 Model front end loader he had acquired in 1994 or 1996. (First Amended Compl., ¶ 7).

After the accident, Menz had the accident scene re-graded, filling in the washout where the tractor landed. (Defendants' Daubert Memo in Support, P. 4, citing Menz Dep., P. 62). Menz further sold the front end loader he had been using, and made substantial repairs to the tractor, including rebuilding the top hood assembly, and replacing both back fenders, the steering wheel, the

---

[2] Defendant New Holland North America, Inc., is a company that owns certain assets of Ford Motor Company's tractor division. (Defendants' Summary Judgment Memo in Support, P. 1 n. 2).

[3] Menz had purchased the tractor in a used condition ten years prior to the accident, and had logged "hundreds of hours" on the tractor each year he owned it. (Defendants' Facts, ¶¶ 2, 3, citing Menz Dep., PP. 30, 39).

muffler, and the seat. (Id.; see also Defendants' Daubert Memo in Support, PP. 10-11, citing Menz Dep., PP. 48, 198).

According to Menz, the tractor was unreasonably dangerous when put to a reasonably anticipated use, in that it was: 1) unstable under normal use conditions; 2) susceptible to tipping over on slightly uneven terrain; 3) susceptible to tipping over while a loaded bucket is being used; 4) not equipped with stabilizers or adequate devices to prevent tipover; 5) not equipped with stabilizers or adequate devices to prevent tipover while front end buckets are in use; and 6) not equipped with roll over protective devices in the event of tipover. (First Amended Compl., ¶ 12). Menz further alleges Defendants failed to give adequate warning regarding the following: 1) the danger of tipover on slightly uneven terrain; 2) the danger of tipover under normal use conditions; 3) the danger of tipover while operating with a front-end loader; and 4) the danger of injury to the user if tipover occurs without a roll over protection system ("ROPS"). (Id., ¶ 19). On the basis of these allegations, Menz seeks to hold Defendants liable on theories of strict liability--defective condition unreasonably dangerous, strict liability--failure to warn, and negligence. (Id., ¶¶ 11-27). Plaintiff Jenifer Menz seeks to hold Defendants liable for loss of consortium. (Id., ¶¶ 42-45).

In their Motion for Summary Judgment, Defendants maintain there exist no genuine issues of material fact, and thus Defendants are entitled to judgment as a matter of law on Counts I, II, III, and VII of Plaintiffs' First Amended Complaint. (Doc. No. 91). In their Motion to Exclude, Defendants maintain L.D. Ryan's opinions are inadmissible under both the Federal Rules of Evidence and the Supreme Court's ruling in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Doc. No. 88).

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Strict Liability (Defective Condition/Unreasonably Dangerous)

As stated above, in Count I of his First Amended Complaint, Menz alleges Defendants are strictly liable for his injury, as it was caused by an allegedly defective product designed and manufactured by Defendants. Specifically, Menz maintains the tractor was unreasonably dangerous

- 4 -

when put to a reasonably anticipated use, for two reasons: first, because it was unstable and/or susceptible to tipping over under normal use conditions, including during use on slightly uneven terrain and with a loaded front end bucket attached; and second, because it was not equipped with roll over protective devices to aid in the event of tipover. (First Amended Compl., ¶ 12).

### A. Was The Tractor Unreasonably Dangerous When Put To Its Anticipated Use As A Result Of Its Inherent Instability?

As stated above, Menz first asserts the tractor at issue was unreasonably dangerous when put to its anticipated use, because it was unstable and/or susceptible to tipping over under normal use conditions, including during use on slightly uneven terrain[4] and with a loaded front end bucket attached. (First Amended Compl., ¶ 12).[5] Under Missouri law[6], in order to prevail in a products liability action under a theory of defective design, Menz must establish that, "1) defendant[s] sold the product in the course of [their] business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was injured as a direct result of such defective condition as existed when the product was sold." Stanger v. Smith & Nephew, Inc., 401 F.Supp.2d 974, 978 (E.D. Mo. 2005) (internal quotations and citations omitted). "As to this fourth element the plaintiff must produce evidence that neither he nor any third person has made alterations to the

---

[4] As noted by Defendants, Menz's subsequent re-grading of the accident scene prior to examination by Defendants or their expert renders his claim of "slightly uneven terrain" insusceptible of proof. (Defendants' Summary Judgment Memo in Support, PP. 2, 9).

[5] Plaintiffs' expert, L.D. Ryan ("Ryan"), essentially concedes that the inherent instability of tractors cannot be designed away entirely. (Defendants' Reply in Support of their Motion for Summary Judgment ("Defendants' Summary Judgment Reply"), PP. 7-8, citing Ryan Dep., Vol. I, P. 59; Vol. II, P. 292; Vol. III, P. 566; Vol. IV, PP. 178-179, 184).

[6] This is a diversity case, where the law of Missouri governs the rights of the parties. (Defendants' Summary Judgment Memo in Support, P. 7).

product, which would create a defect that could be the proximate cause of the damages incurred." Jasinski v. Ford Motor Co., 824 S.W.2d 454, 455 (Mo. App. 1992) (citation omitted).

Upon consideration, the Court finds Menz cannot establish the fourth element of his products liability claim, for several reasons. First, it is undisputed that since the time of the accident, Menz has made substantial repairs to the tractor, including rebuilding the top hood assembly, and replacing both back fenders, the steering wheel, the muffler, and the seat. (Defendants' Summary Judgment Memo in Support, P. 9, citing Menz Dep., P. 48). In light of these alterations, Menz is unable even to establish the condition of the tractor at the time of the accident, much less the condition at the time it was sold by Defendants. (See Defendants' Summary Judgment Memo in Support, PP. 9-10, citing Menz Dep., PP. 41-42, 44 ("Plaintiff cannot even verify that the current internal parts were installed when the tractor was manufactured in 1976 or that the current internal parts of the tractor are the same parts which were in the tractor at the time of the accident.")).

Second, and more importantly, it is undisputed that Menz purchased the tractor in a used condition, and Menz offers absolutely no evidence regarding the tractor's service or repair history during the sixteen year period he did not own it. (Defendants' Summary Judgment Memo in Support, P. 10, citing Menz Dep., P. 30; see also Jasinski, 824 S.W.2d at 456 (refusing to grant presumption that alterations were not made to product during the fifteen year period between time of manufacture and time of accident in case where product was unavailable for inspection)). Under these circumstances, Menz is unable to prove the tractor, "had not been altered in such a way that would create a defect that could be the proximate cause of the damages incurred." Waggoner v. Mercedes Benz of North America, Inc., 879 S.W.2d 692, 696 n. 2 (Mo. App. 1994).

Finally, the Court notes Plaintiffs fail to overcome Defendants' contention that the tractor's rear tires contained unequal ballast at the time of the accident, a condition that significantly impacted

the stability of the tractor and could have proximately caused Menz's injuries.[7] (Defendants' Summary Judgment Memo in Support, PP. 12-14, citing Abramczyk Report, P. 1; Abramczyk Dep., PP. 17-18; Ryan Dep. Vol. I, PP. 121, 193, 195-198; Vol. II, PP. 278-280; Vol. IV, PP. 124-125, 136-137; Menz Dep., PP. 49, 109; Operator's Manual, PP. 35-38; Hill Dep., PP. 102-104, 152-153). See Jones v. Ryobi, Ltd., 37 F.3d 423, 425 (8th Cir. 1994) (citation omitted) ("When a third party's modification makes a safe product unsafe, the seller is relieved of liability even if the modification is foreseeable."). Defendants' Motion for Summary Judgment on this point must therefore be granted.[8]

### B. Was The Tractor Unreasonably Dangerous When Put To Its Anticipated Use As A Result Of Its Lack Of A Roll Over Protection System?[9]

---

[7] In an effort to dispute Defendants' contention regarding unequal ballast, Plaintiffs cite the following testimony from Menz:
Q: Did you personally change any of the ballasting on the tractor?
A: I made sure that the fluid was in the tires, the back tires.
(Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Plaintiffs' Summary Judgment Response"), P. 20, citing Menz Dep., P. 43). As noted by Defendants, however, Plaintiffs' testimony continues to establish he checked the tires at the time he acquired the tractor, ten years before the accident. (Defendants' Summary Judgment Reply, P. 5).

[8] As further support for its ruling, the Court notes Plaintiffs' expert acknowledged he was unable to verify the following critical components of the accident: "the height of the loader at the time of the accident; the weight of the dirt in the loader at the time of the accident; the speed at which the tractor was traveling at the time of the accident; the angle of the turn; the slope of the ground; the depth of the ditch; the soil conditions at the accident scene; whether the wheels contained ballast; the angle of the bucket at the time of the accident; whether there was a hydraulic leak which caused the loader to fall; the nature of the terrain; whether [Menz] was using wheel brakes; the steering radius; and whether [Menz] hit the brakes." (Defendants' Daubert Memo in Support, PP. 11-12, citing Ryan Dep., Vol. I, P. 122; Vol. II, PP. 264, 266-272, 273-274, 278; Vol. III, PP. 460, 483, 487, 559; Vol. IV, PP. 66-67). In light of these gaps, the Court finds Ryan's conclusion the accident was caused by the defective nature of the tractor, rather than the circumstances of the accident and the scene itself, to be inadmissible speculation. See J.B. Hunt Transport, Inc. v. General Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001) ("Because of the deficiencies at the core of his opinion, including his own admission concerning his inability to scientifically reconstruct the accident, [the expert witness's] resulting conclusion--...was mere speculation and pure conjecture.").

[9] As Defendants point out (Defendants' Summary Judgment Reply, P. 7), it is unclear whether Menz intends even to pursue his design defect claim regarding the absence of ROPS. (See Plaintiffs' Summary Judgment Response, P. 22 (emphasis added) ("Plaintiff's claim is the latent and inherent instability of the tractor rendered it unreasonably dangerous, *not the absence of the ROPS*.")). In an

Menz next asserts the tractor at issue was unreasonably dangerous when put to its anticipated use, because it lacked a roll over protection system to aid in the event of a tipover. (First Amended Compl., ¶ 12(f)). As stated above, as part of his products liability claim Menz must establish causation, i.e., that the absence of ROPS directly caused his injury. See Stanger; 401 F.Supp.2d at 978. In order to satisfy this element, Menz relies on the testimony of his expert, L.D. Ryan.[10] Specifically, Ryan seeks to proffer testimony that the Ford 6600 tractor is unreasonably dangerous and defectively designed for failing to include a ROPS, and further that had the accident tractor been equipped with a ROPS (and had Menz been wearing a seatbelt at the time of the accident), Menz would not have been "seriously injured." (Defendants' Daubert Memo in Support, P. 33, citing Ryan Dep., Vol. I, PP. 173-176). As noted above, Defendants seek to exclude the testimony of Plaintiffs' expert witness pursuant to Rule 702 of the Federal Rules of Evidence, and the principles set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Under Eighth Circuit law, "[d]ecisions concerning the admission of expert testimony lie within the broad discretion of the trial court." Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (internal quotations and citation omitted). As a preliminary matter, "'[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence.'" Sappington v. Skyjack Inc., 446 F.Supp.2d 1059, 1061 (W.D. Mo. 2006), quoting Lauzon v. Senco Prods., Inc.,

---

abundance of caution, the Court considers the claim nonetheless.

[10] Upon consideration, the Court finds that in the case at bar, involving an accident with complex farm equipment and numerous potential causes, Plaintiffs are required to present expert testimony in order to establish their claim of design defect. Bryant v. Laiko Intern. Co., Inc., 2006 WL 2788520 at *10 (E.D. Mo. Sept. 26, 2006); see also Shaffer v. Amada American, Inc., 335 F.Supp.2d 992, 998 (E.D. Mo. 2003).

270 F.3d 681, 686 (8th Cir. 2001). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides in relevant part as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Id.

Pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., the seminal case regarding expert opinion testimony, "trial courts must serve as gatekeepers to insure that proffered expert testimony is both relevant and reliable." Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (internal quotations and citations omitted). "In Daubert, the Supreme Court set forth a number of factors that district courts may consider in assessing reliability: (1) whether the theory can be (and has been) tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory enjoys general acceptance in the relevant scientific community." Id. (internal quotations and citations omitted). Further, "Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Sappington, 446 F.Supp.2d at 1062, quoting Lauzon, 270 F.3d at 686.

Upon careful consideration, the Court finds that Ryan's testimony regarding the alleged design defect of an absence of ROPS lacks sufficient basis to meet the reliability requirements of Daubert and Rule 702. See Jaurequi v. John Deere Co., 971 F.Supp. 416, 426 (E.D. Mo. 1997). Specifically, the Court notes that despite its paramount importance under Daubert, it is undisputed Ryan has never tested his theory that Menz would not have suffered serious injury had the tractor been equipped with

a ROPS. (Defendants' Summary Judgment Memo in Support, P. 15, citing Ryan Dep., Vol. I, P. 177). In fact, Ryan has never even examined the ROPS that was available for the accident tractor:

> Q: Have you--have you examined the ROPS that is available for the subject accident tractor?
> A: No.
> Q: Have you analyzed whether that particular ROPS would have prevented [Menz] from injuring his arm?
> A: No, I haven't analyzed it. I don't know what it looks like.
> Q: Did you do any testing of your opinion that he wouldn't have been injured--seriously injured using a Ford 6600 with ROPS?
> A: No....

(Id.).

As a result of Ryan's admitted failure to test his theory, he is unable to establish with any degree of certainty the amount of force the ROPS would or could have withstood, nor can he determine how the tractor and/or Menz would have landed had the tractor been equipped with a ROPS. (Defendants' Summary Judgment Memo in Support, P. 16, citing Ryan Dep., Vol. III, PP. 482, 485, 495-499). Furthermore, despite Ryan's acknowledgment that adding a ROPS would change the center of gravity for the tractor, and thus change the dynamics of the accident, he made no attempt to account for those changes in his analysis of the effect of a ROPS on the accident. (Id., citing Ryan Dep., Vol. III, PP. 478-479, 481, 482, 498-499, 504, 505).

In light of these deficiencies, the Court finds Ryan's testimony regarding the absence of a ROPS lacks a reliable basis in engineering, science or otherwise, and thus is too speculative to be admissible. Jaurequi, 971 F.Supp. at 427. Accordingly, with no other evidence presented as to the allegedly defective design, the Court finds Menz has failed to present a triable issue of material fact as to whether the absence of a ROPS rendered the tractor unreasonably dangerous.[11] See Jaurequi,

---

[11] In his response to Defendants' Motion for Summary Judgment on this point, Menz notes Defendants' expert, Joseph Abramczyk, acknowledged the protective nature of a ROPS. (See Plaintiffs' Summary Judgment Response, PP. 12-14, 24). Abramczyk's testimony refers to ROPS

971 F.Supp. at 427; see also Wagner, 446 F.Supp.2d at 1072. This portion of Defendants' Motion for Summary Judgment will therefore be granted.[12]

## II. **Strict Liability (Failure To Warn)**

As stated above, in Count II of his First Amended Complaint, Menz alleges Defendants are strictly liable for his injury, as the tractor designed and manufactured by Defendants was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics. (First Amended Compl., ¶ 18). Specifically, Menz maintains Defendants failed to give adequate warning of the following dangers: (1) the danger of tipover on slightly uneven terrain; (2) the danger of tipover under normal use conditions; (3) the danger of tipover while operating with a front end loader; and (4) the danger of injury to the user if tipover occurs without a roll over protection system.[13] (Id., ¶ 19).

Under Missouri law, "[t]he elements of a cause of action for strict liability-failure to warn are as follows: (1) defendant sold the product in question in the course of his business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without

---

systems in general, however, and offers no analysis of the effect of such a system on the present accident. Absent such specific testimony, Menz fails to submit a triable issue of fact as to whether the absence of a ROPS directly caused his injury, especially in light of the vast number of unknowns with respect to the accident scene and circumstances of the accident. See Chaney v. Smithkline Beckman Corp., 764 F.2d 527, 529 (8th Cir. 1985) ("The jury, however, is not permitted to speculate about the substantive elements of a case.").

[12] The Court finds Miller v. Varity Corp., 922 S.W.2d 821 (Mo. App. 1996), to be distinguishable. In Miller, Plaintiffs' expert and Defendant's expert agreed the decedent would not have been crushed, if the tractor had been equipped with a ROPS and decedent had been wearing a seat belt. Id. at 827. As noted above, neither side in the instant case offers an opinion as to the injury Menz would have sustained, if any, had his tractor been equipped with a ROPS.

[13] With respect to this final claim of defect, the Court notes the Operator's Manual, which Menz acknowledged receiving and reviewing, contained the following safety precaution: "Use an approved roll bar and seat belt for safe operation. If your tractor is not equipped with a roll bar and seat belt, see your Ford Tractor Equipment Dealer." (Operator's Manual, P. 4).

- 11 -

knowledge of its characteristics; (3) defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning." Cole v. Goodyear Tire & Rubber Co., 967 S.W.2d 176, 183 (Mo. App. 1998) (citation omitted). Further, "[t]here are two separate requirements of causation in a failure to warn case: (1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered his behavior." Id. at 184, citing Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. banc 1992). Summary judgment properly is entered if either causation element is lacking. Mothershead v. Greenbriar Country Club, Inc., 994 S.W.2d 80, 89 (Mo. App. 1999) (citation omitted). Finally, in cases such as this, involving technical and complex machinery whose properties are outside the common knowledge or experience of a jury, "[a] failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff." Davidson v. Besser Co., 70 F.Supp.2d 1020, 1023 (E.D. Mo. 1999) (citation omitted). See also Bryant, 2006 WL 2788520 at *10.

Upon consideration, the Court finds Defendants are entitled to summary judgment on Menz's failure to warn claim. Specifically, it is undisputed that Menz's sole warnings expert, L.D. Ryan, testified there were no warnings Defendants could have given Menz that would have altered his conduct at the time of the accident:

> Q: Is there information that you believe Steve Menz lacked that would have changed the outcome of this accident?
> A: No....
> Q: So there isn't any information that you think he needed to be warned about–
> A: No.
> Q: --that would have changed the outcome.
> A: No. Because if that's true, then I could put on your dashboard, "Be careful; don't drive too fast; stay within the speed limit; make sure you got two or three car spaces ahead of you so if somebody's coming in your rearview mirror, you can get around them." You can't do safety with warnings. It's

> Number 3 or Number 4, depending on the standard. So forget warnings. Fix it....

(Ryan Dep., Vol. I, P. 82).[14] Thus, in the absence of expert testimony, the Court finds Menz fails to make a submissible case with respect to the causation element of his failure to warn claim.[15]

**III.  Negligence**

As stated above, in Count III of his First Amended Complaint, Menz attempts to hold Defendants liable in negligence, alleging the tractor was dangerous in that it was: (1) unstable under normal use conditions; (2) susceptible to tipping over on slightly uneven terrain; (3) susceptible to tipping over while a loaded bucket is being used; (4) not equipped with stabilizers or adequate devices to prevent tipover; (5) not equipped with stabilizers or adequate devices to prevent tipover while front-end buckets are in use; (6) not equipped with rollover protective devices in the event of tipover; and (7) not provided with adequate warnings about such dangerous conditions. (First Amended Compl., ¶ 24).

Under Missouri law, "'[i]n an action for negligence, generally, a plaintiff must allege ultimate facts which if proven, show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff

---

[14] Menz's attempt to counter this sworn testimony with his own affidavit is unavailing. See Klugesherz v. American Honda Motor Co., Inc., 929 S.W.2d 811, 813-14 (Mo. App. 1996).

[15] Menz attempts to overcome Defendants' Motion for Summary Judgment by pointing out Missouri allows a presumption a plaintiff would have heeded an absent warning. See Cole, 967 S.W.2d at 184. The presumption is only implicated, however, "when there is sufficient evidence from which a jury could find plaintiff did not already know of the danger." Id. (citation omitted). That is not the case here, as Menz conceded that prior to the accident (1) he was aware any tractor would tip if driven across a steep enough hillside, and (2) he had reviewed the tractor's Operator's Manual containing warnings instructing operators to use the tractor with a ROPS. (Defendants' Summary Judgment Reply, P. 12, citing Menz Dep., PP. 34-35, 50, 126, 183; Operator's Manual, P. 4). These admissions illustrate Menz had knowledge of the specific risk of injury encountered here. See Cole, 967 S.W.2d at 185.

resulting from such failure.'" Pro Service Automotive, L.L.C. v. Lenan Corp, 2005 WL 3371054 at *13 (W.D. Mo. Dec. 12, 2005), citing Scheibel v. Hillis, 531 S.W.2d 285, 288 (Mo. 1976) (en banc). Thus, "[t]o recover on their claim for negligent manufacture, design or failure to warn, the Plaintiffs must establish that the Defendant failed to use ordinary care to either manufacture and/or design the [Ford 6600 tractor] to be reasonably safe or to adequately warn of the risk of harm from [the alleged defect in the Ford 6600 tractor]." Id. (internal quotations and citation omitted).

A Court in this district previously has held that, "[n]egligence claims have a higher threshold of proof than strict liability claims." Jaurequi, 971 F.Supp. at 431, citing Peitzmeier v. Hennessy Indus., Ind., 97 F.3d 293, 296 n. 2 (8th Cir. 1996). Thus, in light of this Court's conclusion that Menz fails to present triable strict liability claims for defective design or failure to warn, "the Court similarly finds that [Menz] has not presented issues of material fact necessary to preclude summary judgment on his claims of negligence against defendants." Id. at 431-32 (citation omitted). Defendants' Motion for Summary Judgment on Menz's negligence claims must therefore be granted.

## IV.  Loss of Consortium

In the final Count of the First Amended Complaint, Plaintiff Jenifer Menz alleges loss of consortium. (First Amended Compl., ¶¶ 42-45). In their response to Defendants' Motion for Summary Judgment, Plaintiffs concede that a loss of consortium claim is wholly derivative, and thus rises or falls with the success of the underlying claims of the injured spouse. (Plaintiffs' Summary Judgment Response, P. 31). See Wright v. Barr, 62 S.W.3d 509, 537 (Mo. App. 2001). Given the Court's finding of a failure of proof on Menz's claims, his wife's derivative claim fails as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants New Holland North America, Inc. and Ford Motor Company's Motion for Summary Judgment (Doc. No. 91) is **GRANTED**, and Plaintiffs' claims against Defendants New Holland North America, Inc. and Ford Motor Company are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants New Holland North America, Inc. and Ford Motor Company's Motion to Exclude the Testimony of Plaintiff's Expert L.D. Ryan (Doc. No. 88) is **GRANTED** in part, in accordance with the above, and **DENIED** as moot in all other respects.

**IT IS FURTHER ORDERED** that Defendants New Holland North America, Inc. and Ford Motor Company's Request for Oral Argument on their Motion to Exclude the Testimony of Plaintiff's Expert L.D. Ryan (Doc. No. 90) is **DENIED** as moot.[16]

Dated this 9th day of November, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[16] See Anderson, 340 F.3d at 523-24 (citation omitted) ("The district court reviewed [Ryan's] lengthy deposition before ruling [Ryan] was not qualified as an expert. The failure to hold a hearing was not an abuse of discretion.").